United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13          IN THE UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  MICHAEL PRYOR et al,                    No   C 10-1930 VRW

17          Plaintiffs,                          ORDER

18          v

19  OVERSEAS ADMINISTRATIVE SERVICES,
    LTD et al,
20
            Defendants.
21
    _____/
22

23          Plaintiffs, current and former employees of defendants,

24  move the court for an order compelling defendants Overseas

25  Administrative Services, Ltd; Service Employees International, Inc;

26  KBR Technical Services, Inc; Kellogg Brown & Root Services, Inc;

27  KBR, Inc; Halliburton, Inc; KBR Holdings, LLC; Kellogg Brown & Root

28  LLC; Kellogg Brown & Root International, Inc;  Kellogg Brown &

United States District Court
For the Northern District of California

Root, Inc; and DII Industries, LLC (collectively, "defendants") to proceed with an ongoing arbitration pursuant to 9 USC §4. After plaintiffs filed their motion to compel, defendants moved to dismiss or, in the alternative, to stay this action under the first-to-file rule or for lack of personal jurisdiction. Doc #24. A hearing on the above motions was held on June 3, 2010. For the reasons that follow, defendants' motion to dismiss or to stay is DENIED; the court also DENIES plaintiffs' motion to compel arbitration.

I

The underlying arbitration is a wage and hour dispute in which plaintiffs allege they were forced to work "off the clock" while working for defendants in Iraq. Defendants assert, and plaintiffs do not seem to rebut, that these proceedings began as a putative class action filed in the Southern District of Texas on October 31, 2005. See <u>Dingle et al v Halliburton Co</u>, 05-CV-3719 (SD Tex). Though the parties seem to agree that the underlying dispute is not connected in any way to California, on November 1, 2007, the same day that the <u>Dingle</u> plaintiffs voluntarily dismissed their suit, plaintiffs in this action filed a JAMS arbitration action in San Francisco.

The motion to compel arbitration currently before the court is a direct result of the Supreme Court's recent opinion in <u>Stolt-Nielsen S A v AnimalFeeds International Corp</u>, 559 US ---, 130 S Ct 1758 (2010) ("Stolt"). As of late April 2010, the parties to the current dispute were engaged in a putative class action arbitration. After the Supreme Court handed down <u>Stolt</u>, however,

defendants signaled their intention to proceed with arbitration on an individual-plaintiff basis only.  On May 3, 2010, defendant Service Employees International, Inc ("SEII"), filed a declaratory judgment action in the Southern District of Texas seeking a judicial determination that the parties' arbitration agreements did not call for class arbitration.  <u>Service Employees International, Inc v Pryor et al</u>, 4:10-cv-01577 (Hittner, J) (S D Tex) ("Texas action" or "Texas declaratory judgment action").  The next day, plaintiffs filed their petition in this court for an order compelling arbitration.  See Doc #3.

## II

The court first considers defendants' motion to dismiss for lack of personal jurisdiction.  Doc #24.  A summary of events and relevant contractual language at issue is as follows:

Halliburton Dispute Resolution ("HDR") Rule 3.B reads:

A Party may initiate proceedings by serving a written request to initiate proceedings on AAA, JAMS or CPR and tendering the appropriate administration fee.

Doc #5-2 at 46.

On November 1, 2007, plaintiffs filed a notice of initiation of class arbitration with the JAMS office in San Francisco.  Doc #3-1 at 37-58.

HDR Rule 5 sets forth the procedures for the appointment of an arbitrator:

Immediately after payment of the arbitration fee, AAA, JAMS, or CPR shall simultaneously send each Party an identical list of names of persons chosen from a panel of qualified arbitrators which AAA, JAMS, or CPR shall select and maintain. Each Party to the Dispute shall have fourteen (14) days from the transmittal date to strike any names objected to, number the remaining names in order of preference, and return the

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

> list to AAA, JAMS, or CPR. If a Party does not return the list
> within the time specified, all persons therein shall be deemed
> acceptable.  From among the persons who have been approved on
> both lists, and in accordance with the order of mutual
> preference, AAA, JAMS, or CPR shall invite the acceptance of
> the arbitrator to serve.  Any Party shall have the right to
> strike one list of arbitrators in its entirety.  When a Party
> exercises this right, AAA, JAMS, or CPR shall issue a new list
> of arbitrators consistent with the above procedures.

Doc #5-2 at 46.

After JAMS proposed a pool of California-based arbitrators, Doc #58 at 8, defendants, on November 16, moved JAMS to "issue a new pool of arbitrators who reside in or around Texas." Doc #59-4 at 3-5.  While this request highlighted the lack of connection between the underlying events, parties and California, defendants acknowledged that "the KBR Dispute Resolution Program allows the arbitrator to determine the location of the arbitration hearing itself."  Id at 4.

Plaintiffs objected to defendants' request to rescind the arbitration pool on November 19, 2007.  Doc #59-5 at 2-5.

HDR Rule 8.A and 8.C establish that the arbitrator must "set the date, time and place of any proceeding" and "shall make every effort, without unduly incurring expense, to accommodate the Employee or Applicant in the selection of a proceeding location." Doc #5-2 at 47.  In the disputed arbitration, plaintiffs are both "employees" and "applicants."

On November 26, 2007, JAMS appointed Michael J Loeb, of San Francisco, to arbitrate the dispute.  Doc #59-6 at 3.

On December 11, 2007, defendants filed an answering statement in which they denied that San Francisco, Los Angeles or New York are appropriate locations for an arbitration hearing, but //

4

**United States District Court**
For the Northern District of California

failed to raise any jurisdictional defense in support of such argument.  Doc #3-1 at 60-61.

Plaintiffs contend, and defendants do not rebut, that depositions of all but one named plaintiff took place in San Francisco in November 2008.  See Doc ##58 at 9; 59-7 at 2.

Although the HDR Rules provide for a party to request a conference or discussion and determination of venue, HDR Rule 9.A, Doc #5-2 at 47, defendants apparently made no such request until almost two years after plaintiffs filed their notice of initiation, when, on August 18, 2009, defendants submitted a letter brief contending that the most appropriate location for the hearing is Houston.  Doc #59-9 at 2.  In the alternative, defendants stated that "[a] hearing in Los Angeles or New York would at least neutralize any home-field advantage that Claimants may seek by attempting to hold proceedings in this case in San Francisco."  Id at 7.

On October 6, 2009, plaintiffs took a FRCP 30(b)(6) deposition regarding defendants' timekeeping policies and procedures.  Doc #3-1 at 66.

Personal jurisdiction or other location-focused concerns are absent from the parties' joint status report of December 8, 2009.  See Doc #3-1 at 64-68.

As late as April 23, 2010, defendants continued to participate in the class arbitration.  See Doc ##5-5 at 2; 5-4 at 35-58 (April 15, 2010).

On April 27, 2010, the Supreme Court handed down its decision in Stolt.  130 S Ct 1758.

//

5

**United States District Court**
For the Northern District of California

On May 3, 2010, defendants' counsel wrote a letter to Loeb and plaintiffs explaining that they believe <u>Stolt</u> forecloses class arbitration proceedings under the parties' agreement. Counsel did not, however, raise any argument that the San Francisco arbitration should cease due to reasons concerning jurisdiction. To the contrary, counsel explained that defendants read <u>Stolt</u> to make it "clear that our instant arbitration <u>can proceed</u> only with respect to the claims of the named Claimants." Doc #5-5 at 4 (emphasis added). In the same letter, counsel sought a stipulation that "this arbitration can and will proceed on an individual basis only, i.e., on behalf of the current Claimants." Id at 5.

The same day, May 3, SEII filed a declaratory judgment and injunctive relief action in the Southern District of Texas. Doc #5-5 at 8.

One day later, on May 4, 2010, plaintiffs filed the above-captioned action. Doc #3.

A

Plaintiffs assert that defendants have "consented to personal jurisdiction in California by expressly consenting to arbitrate in California and by consenting to arbitrate in a forum selected by [plaintiff] employees." Doc #58 at 9. In other words, plaintiffs argue that, given the language of the arbitration agreement, because plaintiffs chose to file an arbitration complaint in San Francisco and because the arbitrator set the place of proceeding in this city, defendants have availed themselves of California. Defendants contend that they:

//

United States District Court
For the Northern District of California

> have never consented to an arbitration hearing in California,
> let alone participated in one.  Thus, it cannot be said that
> Defendants have done "some act by which [they] purposefully
> avail[ed] [themselves] of the privilege of conducting
> activities in the forum."

Doc #64 at 16, quoting <u>Fireman's Fund Ins Co v Nat'l Bank of
Cooperatives</u>, 103 F3d 888, 894 (9th Cir 1996).

Despite plaintiffs' argument that "if the court in the
selected forum d[oes] not have personal jurisdiction to compel
arbitration, the agreement to arbitrate would be effectively
unenforceable, contrary to the strong national policy in favor of
arbitration," Doc #58 at 10 (citing and collecting cases), the
personal jurisdiction dispute is one of plaintiffs' making.  If
plaintiffs had instituted the arbitration proceeding in a
jurisdiction in which even one defendant were subject to personal
jurisdiction, this issue might not have arisen.  Instead, despite
their allegations that defendants have engaged in forum shopping,
plaintiffs filed an arbitration complaint in a jurisdiction that
has no connection to the arbitration agreement, employment
contracts at issue, any plaintiff, any defendant or any of the
underlying claims.  It is of no concern to the court that
arbitration tribunals apparently allow for such tenuous
jurisdictional underpinnings.  In the absence of case law to the
contrary, however, the court being less unconstrained must evaluate
defendants' alleged personal jurisdiction under the factors set
forth by <u>International Shoe</u> and its progeny.  <u>International Shoe Co
v Washington</u>, 326 US 310 (1945).  When considering personal
jurisdiction, the touchstone remains purposeful availment: "[b]y
requiring that contacts proximately result from actions by the
defendant <u>himself</u> that create a substantial connection with the

7

forum state, the Constitution ensures that a defendant will not be
haled into a jurisdiction solely as a result of random, fortuitous,
or attenuated contacts."  Glencore Grain Rotterdam B V v Shivnath
Rai Harnarain Co, 284 F3d 1114, 1123 (9th Cir 2002) (emphasis in
original; internal quotations omitted).

        Nonetheless, the personal jurisdiction requirement is a
waivable right; there are a "variety of legal arrangements" by
which a litigant may give "express or implied consent to the
personal jurisdiction of the court."  Burger King Corp v Rudzewicz,
471 US 462, 473 n14 (1985), quoting Insurance Corp of Ireland v
Compagnie des Bauxites de Guinee, 456 US 694, 703 (1982).  And it
appears from the record that defendants have consented to the
personal jurisdiction of this court with respect to plaintiffs'
motion to compel.

        The arbitration clause at issue does not contain a forum
selection clause or other geographic limiting principle.  Rather,
the arbitration clause — which defendants drafted — contemplates
the possibility of arbitration in California (and everywhere else).
It reads, in relevant part:

> The arbitrator shall set the date, time and place of any
> proceeding. * * * The arbitrator shall make every effort,
> without unduly incurring expense, to accommodate the Employee
> or Applicant in the selection of a proceeding location.

Doc #5-2 at 47.  Courts have found that "[d]ue process is satisfied
when a defendant consents to personal jurisdiction by entering into
a contract that contains a valid forum selection clause."  See,
for example, St Paul Fire and Marine Insurance Co v Courtney
Enterprises, Inc, 270 F3d 621, 624 (8th Cir 2001) (collecting
cases).  While defendants' vague "place" clause, which again, they

United States District Court
For the Northern District of California

8

United States District Court
For the Northern District of California

drafted, does not specify forums in which to arbitrate, it clearly envisions that arbitration may be commenced in jurisdictions other than defendants' domiciles (including JAMS resolution centers, of which eleven, including JAMS's home office, are in California). See Doc #5-2 at 46 ("A Party may initiate proceedings by serving a written request * * * on [] JAMS."); see http://www.jamsadr.com/locations/.

Moreover, the "place" clause does not refer to defendants or suggest a proposed arbitration location.  Pursuant to the language which defendants themselves drafted, it is perfectly foreseeable that an aggrieved employee might file an arbitration proceeding in California, the nation's most populous jurisdiction.

More important are defendants' actions in relation to the filing of the arbitration in San Francisco.  At oral argument the court asked defendants why they had agreed to arbitrate, before <u>Stolt</u>, the class action arbitration.  Counsel responded that <u>Bazzle</u>, or at least the parties' (and the Ninth Circuit's) misunderstanding of <u>Bazzle</u>, suggested that any challenge to class action status of the arbitration would have been "futile."  But this observation, which the court may not even fully agree with, misses the point:  while parties, arbitrators and courts around the nation may have been confused, or "baffled" in Justice Alito's words, by <u>Bazzle</u>, see <u>Stolt</u>, 130 S Ct at 1772, that case has no import for the question of personal jurisdiction before this court. To put it another way, even if <u>Bazzle</u> mandated that defendants arbitrate on a class-wide basis, it did not mandate that defendants had to engage in class arbitration <u>in California</u>.

//

**United States District Court**
For the Northern District of California

Rather than answering plaintiffs' filing, conducting depositions in California, attending a hearing in California and engaging in discovery, defendants could have refused to arbitrate in California.  Then, after plaintiffs filed a motion to compel arbitration, defendants could have moved to dismiss for lack of personal jurisdiction.  Under this alternative framework (and the parties' current submissions), the court would have had no basis for concluding that it had personal jurisdiction over defendants.

Instead, defendants have proceeded, for over two years, with an arbitration in California.  Indeed, as part of their opposition to plaintiffs' motion to compel, defendants argue, in essence, *that not only have we arbitrated, but we are continuing to arbitrate in California on an individual-plaintiff basis*.  By engaging in arbitration in California, whether on an individual or class action basis, defendants have availed themselves of this forum for purposes of plaintiffs' motion to compel.

Lastly, defendants, in challenging the San Francisco location of the arbitration, specifically asked for an alternative arbitration hearing location of Los Angeles.  While defendants (and some San Franciscans) may consider Los Angeles a world apart, Los Angeles is after all a city in California.  The court finds, therefore, that by requesting an arbitration hearing location in Los Angeles, defendants waived any personal jurisdiction defense.

Because defendants, in drafting such a vague and inclusive "place" clause, implicitly consented to whichever jurisdiction would "accommodate the employee," and further because they have engaged, regardless of their interpretation of <u>Bazzle</u>, in the arbitration proceeding for more than two years, defendants

10

**United States District Court**
For the Northern District of California

cannot now contend that they did not waive their personal jurisdiction defense.  This is especially so given the fact that defendants oppose plaintiffs' motion to compel arbitration, in part, on the basis that they are still engaging in arbitration in San Francisco.  See Doc #50 at 15-16 ("Since raising the <u>Stolt-Nielson</u> issue with Plaintiffs, Defendants have produced more than 62,000 pages of documents, have met and conferred over ongoing discovery disputes, and have agreed to produce one or more corporate representatives on several deposition topics.").  When a party agrees to arbitrate in a particular state, via explicit or implicit consent, district courts of that state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration.  <u>PaineWebber, Inc v The Chase Manhattan Private Bank (Switzerland)</u>, 260 F3d 453, 461 (5th Cir 2001); <u>Victory Transport Inc v Comisaria General de Abastecimientos y Transportes</u>, 336 F2d 354, 363 (2d Cir 1964).  If the court were to hold otherwise, it would deprive plaintiffs of the benefit of their bargain; namely, the ability to bring an arbitration suit in any jurisdiction other than defendants' domiciles.  Once defendants participated in the San Francisco arbitration and petitioned for the hearing to be relocated to Los Angeles, defendants consented to this jurisdiction and waived their personal jurisdiction defense.  The <u>Stolt</u> question does not relate to this personal jurisdiction analysis.  For the above reasons, defendants' motion to dismiss for lack of personal jurisdiction is DENIED.

//

//

//

B

Having found that defendants are subject to personal jurisdiction with respect to plaintiffs' motion to compel arbitration, Doc #5, the court next considers defendants' motion to dismiss or to stay this action pending resolution of the Texas declaratory judgment action under the first-to-file rule.  Doc #24.

The first-to-file rule permits a district court to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district."  Pacesetter Systems, Inc v Medtronic, Inc, 678 F2d 93, 94-95 (9th Cir 1982).  "The most basic aspect of the first-to-file rule is that it is discretionary; 'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'"  Alltrade, Inc v Uniweld Products, Inc, 946 F2d 622, 628 (9th Cir 1991), quoting Kerotest Mfg Co V C-O-Two Fire Equipment Co, 342 US 180, 183-84 (1952).  While the rule rests with the district court's discretion, it "serves the purpose of promoting efficiency well and should not be disregarded lightly."  Church of Scientology of California v United States Dept of Army, 611 F2d 738, 750 (9th Cir 1979).  In applying the first-to-file rule, a court looks to three threshold factors: "(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues."  Z-line Designs, Inc v Bell'O International, LLC, 218 FRD 663, 665 (ND Cal 2003).

In determining similarity of parties and issues, courts have borrowed from the state-federal abstention rule and have applied the doctrine to cases presenting "substantially similar" parties or issues.  See Nakash v Marciano, 882 F2d 1411, 1416 (9th

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Cir 1989) (finding, for purposes of state-federal abstention, "[w]e agree that exact parallelism does not exist, but it is not required.  It is enough if the two proceedings are 'substantially similar.'").  Thus, while the Ninth Circuit has referred to the first-to-file rule as encompassing "identical" federal cases, see <u>Pacesetter</u>, 678 F2d at 95, courts have held that the rule applies where the parties and issues involved in the competing cases are "substantially similar."  See, for example, <u>Adoma v University of Phoenix</u>, Inc, 711 F Supp 2d 1142, 1148 (ED Cal 2010); <u>Meints v Regis Corp</u>, 2010 WL 625338 at *2 (SD Cal 2010) (slip copy); <u>SASCO v Byers</u>, 2009 WL 1010513 at *4 (ND Cal 2009) (Fogel, J) (slip copy); <u>OneBeacon Ins Co v Trackwell</u>, 2009 WL 2231689 at *1 (D Or 2009) (slip copy); <u>Best Western International, Inc v Mahroom</u>, 2007 WL 1302749 at *2 (D Az 2007); <u>Fujitsu Ltd v Nanya Technology Corp</u>, 2007 WL 484789 at *3 (ND Cal 2007) (Wilken, J); <u>Inherent.com v Martindale-Hubbell</u>, 420 F Supp 2d 1093, 1097 (ND Cal 2006) (Patel, J).

This flexible construction of the first-to-file rule seems to find support in the Supreme Court, which has noted that circumstances permitting a federal court to defer to another federal court are broader than circumstances justifying federal court deferral to a state proceeding.  See <u>Colorado River Water Conservation District v United States</u>, 424 US 800, 817 (1976) (between competing cases in federal district courts, "though no precise rule has evolved, the general principle is to avoid duplicative litigation").  Such flexible application of the first-to-file rule also comports with the Ninth Circuit's warning in <u>Church of Scientology</u> that "in this day of increasingly crowded

13

federal dockets * * * it [is] imperative to avoid concurrent litigation in more than one forum whenever consistent with the rights of the parties."   611 F2d at 749-750, citing <u>Crawford v Bell</u>, 599 F2d 890, 893 (9th Cir 1979).

As discussed above, on May 3, 2010, defendant SEII filed a declaratory judgment action in Texas.  A day later, plaintiffs filed their petition to compel arbitration in this action.  The Texas action, therefore, was clearly filed first.

The issue presented in both cases is substantially similar.  While the Texas declaratory judgment action and this petition are positioned to reach the issue in opposite ways, plaintiffs in this action and plaintiff in the Texas action seek to reach the identical issue: whether, in the wake of <u>Stolt</u>, the San Francisco arbitration may proceed on a class-action basis.

The Texas action, however, does not involve substantially similar parties as this matter.  While the individual plaintiffs here are named defendants in the Texas action, only one defendant, SEII, is a named plaintiff in the Texas declaratory judgment action.  This is problematic for two reasons.  First, at oral arguments plaintiffs asserted that at least some of the arbitration agreements at issue involved defendants other than SEII.  Second, the court is unclear what ability the Texas district court would have to ensure that the remaining defendants here would abide by his ruling as to SEII.  Without more information regarding the scope of the Texas action, this court cannot conclude that this action and the Texas action involve substantially similar parties.  Defendants' motion to dismiss or to stay pursuant to the first-to-file rule, Doc #24, is therefore DENIED.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

III

The court next turns to plaintiffs' motion to compel arbitration.  To grant a petition to compel arbitration, a district court must determine that the dispute is covered by written agreement to arbitrate and the plaintiff has been aggrieved by the defendant's failure, neglect or refusal to arbitrate.  <u>Avant Petroleum, Inc v Pecten Arabian Ltd</u>, 696 F Supp 42, 44 (SDNY 1988).  An action to compel arbitration accrues only when the defendant unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate the subject matter of the dispute.  <u>PaineWebber Inc v Faragalli</u>, 61 F3d 1063, 1067 (3d Cir 1995); see also 9 USC § 4.

Put simply, the court questions whether it should compel an arbitration that is already being arbitrated.  In other words, defendants' alleged failure to arbitrate is, in the court's view, not a failure to arbitrate at all; rather, it is a procedural challenge.  See Doc #50 at 15-16.  While plaintiffs may not agree on the nature of defendants' cooperation and challenge that defendants should be forced to arbitrate on a class basis, the arbitration procedure is best left to the arbitrator.  See <u>Green Tree Financial Corp v Bazzle</u>, 539 US 444, 447 (2003) ("<u>Bazzle</u>"); <u>Howsam v Dean Witter Reynolds, Inc</u>, 537 US 79, 84 (2002).

Furthermore, given the fact that the parties do not dispute that (some form of) arbitration is mandatory under their agreement, the court finds that it should defer to the arbitrator to determine how the arbitration should proceed.

**United States District Court**
For the Northern District of California

**A**

In considering whether a particular dispute can be resolved in arbitration, the Supreme Court has recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute he has not agreed so to submit." United Steelworkers of America v Warrior & Gulf Navigation Co, 363 US 574, 582 (1960). Nevertheless, the Court has also recognized a "liberal federal policy favoring arbitration agreements." Howsam, 537 US at 83, quoting Moses H Cone Mem'l Hosp v Mercury Constr Corp, 460 US 1, 24-25 (1983). While parties "may agree to limit the issues they choose to arbitrate," Stolt, 130 S Ct at 1774, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc, 473 US 614, 626 (1985), quoting Moses, 460 US at 24-25.

There is, however, an important exception to the policy favoring arbitration: special gateway "'question[s] of arbitrability' [are] issue[s] for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam, 537 US at 83, quoting AT&T Techs, Inc v Communications Workers of Am, 475 US 643, 649 (1986); see also PacifiCare Health Sys, Inc v Book, 538 US 401 (2003); Rent-A-Center, West, Inc v Jackson, 130 S Ct 2772 (2010). The phrase "question of arbitrability" is applicable in "the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." Howsam, 537 US at 83. Two examples of questions of arbitrability are (i) whether a contract with an arbitration clause is binding,
//

16

and (ii) whether a binding arbitration contract applies to a
particular dispute.  Id at 84.

B

Defendants argue that, before Bazzle, the Ninth Circuit
viewed the related question whether arbitration proceedings can be
consolidated as a question of arbitrability.  Doc #50 at 17,
relying on Weyerhaeuser Co v Western Seas Shipping Co, 743 F2d 635
(9th Cir 1984).  Defendants then suggest that the court ignore
Bazzle and its (apparently mistaken) progeny — even as persuasive
authority — and extend Weyerhaeuser to the current situation.

In Weyerhaeuser, appellant asked the court to consolidate
two arbitration disputes:  one involving indemnification and one
involving liability.  743 F2d at 636.  The Ninth Circuit refused to
consolidate the arbitration proceedings, finding no evidence that
the parties agreed to joint arbitration.  Id at 636-37.  By
engaging in such a determination, the Ninth Circuit implicitly
recognized that courts, not arbitrators, should determine whether
contracts express intent to allow consolidated arbitration.
Defendants reason that this court should follow and extend
Weyerhaeuser and hold that this court, rather than an arbitrator,
should determine whether the parties' contract expresses intent to
allow class arbitration.  Doc #50 at 17.

The court finds the precedential value of Weyerhaeuser
questionable at best.  Weyerhaeuser was decided before the Supreme
Court continued to develop the "liberal federal policy favoring
arbitration agreements," Howsam, 537 US at 83, and does not
acknowledge that "any doubts concerning the scope of arbitrable

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

issues should be resolved in favor of arbitration." _Mitsubishi_, 473 US at 626; see also _Gilmer v Interstate/Johnson Lane Corp_, 500 US 20, 25-26 (1991); _Volt Information Sciences, Inc v Board of Trustees of Leland Stanford Junior Univ_, 489 US 468, 479 (1989). Moreover, _Weyerhaeuser_ does not explicitly consider whether a court or an arbitrator should determine the question whether the parties agreed to consolidated arbitration.  See _Weyerhaeuser_, 743 F2d at 636-37.

        Most importantly, not only would the court be taking _Weyerhaeuser_ out of context if it read the case as establishing a rule that consolidated arbitration is a question of arbitrability, but the attempted consolidation in _Weyerhaeuser_ is entirely different from the purported class arbitration here.  _Weyerhaeuser_ involved two separate agreements between the parties; each contained its own arbitration clause and each clause required only arbitration between the parties to the agreement.  The question for the court was whether these distinct agreements comprised "a written arbitration agreement."  743 F2d at 637.  Conversely, this case involves one uniform contract — which the parties seem to agree unquestionably applies to the disputes at issue.  Thus, the question presented is whether the parties' agreement permits resolution of disputes via class arbitration.  While similar, the issues presented here and in _Weyerhaeuser_ are certainly different enough to merit a more searching inquiry.  Rather than mechanically extending _Weyerhaeuser_ to the current context, the court takes a closer look at more recent developments below.

//

//

United States District Court

For the Northern District of California

C

The parties do not bring to the court's attention any Ninth Circuit or Supreme Court cases holding that the question whether a contract permits class arbitration is a gateway question of arbitrability. That is to say, the parties do not bring forth binding precedent that directs this court to undertake the class arbitrability determination. Defendants, however, make much of the Ninth Circuit's reading of Bazzle. According to at least one Ninth Circuit panel, Bazzle held that the question whether a contract permits class arbitration is an issue for the arbitrator. See Sanford v Memberworks, Inc, 483 F3d 956, 964 (9th Cir 2007). The Supreme Court has since explained that "[w]hen Bazzle reached this Court, no single rationale commanded a majority." Stolt, 130 S Ct at 1771. Thus, it is unclear after Stolt and Bazzle where the Supreme Court and the Ninth Circuit stand on whether courts or arbitrators should determine whether an arbitration clause allows class arbitration.

A plurality of the Supreme Court in Bazzle comprised of Justices Breyer, Scalia, Souter and Ginsburg, held that class arbitrability is not a gateway question of arbitrability. 539 US at 452-53.[1] In the court's view, the Bazzle plurality's logic makes a great deal of sense: class arbitrability "concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties." Id. Instead, "the

---

[1] Justice Alito's majority opinion in Stolt seems to discount entirely Justice Stevens's Bazzle concurrence, in which Justice Stevens, citing Howsam, 537 US 79, observes that "[a]rguably the interpretation of the parties' agreement should have been made in the first instance by the arbitrator, rather than the court." 539 US at 455.

**United States District Court**
For the Northern District of California

relevant question here is <u>what kind of arbitration proceeding</u> the parties agreed to." Id (emphasis in original). As the <u>Bazzle</u> plurality concluded, "[a]rbitrators are well situated to answer that question." Id.

This reasoning reflects that of the Court a mere year earlier in <u>Howsam</u>, in which Justice Breyer, writing for a seven-Justice majority, stressed the importance of leaving procedural issues to arbitrators:

> Thus "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively not for the judge, but for an arbitrator, to decide. So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled."

<u>Howsam</u>, 537 US at 84-85 (citations omitted); see also <u>Lagstein v Certain Underwriters at Lloyd's, London</u>, 607 F3d 634, 643-44 (9th Cir 2010) (collecting cases).

As defendants point out, <u>Stolt</u> made clear that existing Ninth Circuit precedent following <u>Bazzle</u> was based on a basic misreading of <u>Bazzle</u>. Doc #50 at 17; see also <u>Sanford v Memberworks, Inc</u>, 483 F3d 956, 964 (9th Cir 2007). Moreover, since these cases appear to follow mechanically <u>Bazzle</u> and do not thoroughly discuss whether arbitrators should determine class arbitrability, it is difficult for the court to conclude that any Ninth Circuit panel has found the <u>Bazzle</u> plurality's view persuasive.

Although <u>Stolt</u> clarified that the <u>Bazzle</u> plurality no longer states binding precedent, nothing in <u>Stolt</u> suggests that

**United States District Court**
For the Northern District of California

courts should not treat Bazzle as persuasive authority.  Stolt, 130 S Ct 1758.  And since the parties do not provide any relevant Ninth Circuit authority to rely on — other than Weyerhaeuser — and this court finds none, the Bazzle plurality is the best authority before this court.  Therefore, the court follows the Bazzle plurality and does not treat class arbitration as a gateway question of arbitrability.

For the reasons explained above, the court finds that the question whether arbitration may proceed on a class action basis is not a gateway question of arbitrability.  Accordingly, the court finds that arbitrator Loeb should determine whether plaintiffs can pursue class arbitration.

V

For the above reasons, defendants' motion to dismiss or to stay, Doc #24, and plaintiffs' motion to compel arbitration, Doc #5, are DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Judge